No. 04-00-00459-CV



MISSION PARK FUNERAL CHAPEL, INC.,


Appellant



v.



Margarita Silva GALLEGOS, Individually and as Surviving Daughter of Javier Silva, Deceased
and as Independent Administrator of the Estate of Javier Silva; Maria T. Pierce, Individually and
as Surviving Daughter of Javier Silva, Deceased; et al.,

Appellee



From the 73rd Judicial District Court, Bexar County, Texas


Trial Court No. 1997-CI-04491


Honorable Andy Mireles, Judge Presiding



Opinion by: Catherine Stone, Justice


Sitting: Phil Hardberger, Chief Justice

 Tom Rickhoff, Justice

 Catherine Stone, Justice


Delivered and Filed: May 9, 2001


AFFIRMED ON CONDITION OF REMITTITUR

 This is an appeal of a damages award rendered in favor of four adult children who suffered
mental anguish when Mission Park Funeral Chapel mishandled the funeral arrangements of their
deceased father, Javier Silva. The only issue on appeal is the propriety of the attorney's fees award.
For the reasons stated herein, we affirm the judgment of the trial court, conditioned on a remittitur
of a portion of the attorney's fees.

Procedural and Factual Background

 Following his death at home, Javier Silva's body was transported to Mission Park Funeral
Chapel for funeral and burial preparations that Silva had previously purchased with a pre-arranged
funeral contract. Something was amiss, however, because on the first day of viewing, a urine-like
odor was detected in the room where Silva's body laid in state. On the second day of viewing the
odor continued, and Silva's face became discolored. Silva's children complained to Mission Park
employees, but the following morning the problem still had not been remedied. Believing that family
members wanted an immediate burial that morning rather than the originally-planned afternoon burial,
a Mission Park employee brought Silva's casket to the cemetery and buried him. Meanwhile, Silva's
family was in the hallway outside the viewing room thinking that the funeral director was taking care
of the odor and discoloration problems and waiting for the funeral service to begin. Silva's adult
children were so distressed by these events that three years after his death they had his body exhumed
to verify that he had indeed been buried next to his wife. 

 The four children brought a negligence claim against Mission Park seeking damages for past
and future mental anguish. Margarita Silva Gallegos sought additional damages for breach of
contract on the pre-need funeral agreement. The jury awarded a total of $322,500 to the Silva
children for past and future mental anguish damages. Additionally, Margarita was awarded $2,700
for breach of contract damages. Mission Park does not contest these damages. The jury also
awarded $225,000 in attorney's fees for work through trial, and a conditional award of $30,000 in
appellate attorney's fees. 

Attorney's Fees

 Mission Park challenges the award of attorney's fees claiming: (1) the jury question omitted
the word "reasonable" when inquiring about the proper amount of fees to be awarded, thereby failing
to provide the jury with any standard by which to assess attorney's fees; and (2) the fees awarded are
grossly excessive and not supported by factually sufficient evidence. The Silvas respond that Mission
Park failed to preserve error on the charge and that any error is harmless.

The Court's Charge

 Question 10 of the Court's Charge, which was predicated on an affirmative answer to the
breach of contract question, inquired as follows:

 What sum of money, if any, in addition to actual damages, should be awarded to
MARGARITA SILVA GALLEGO's attorneys in this case, stated in dollars and
cents?

 

As indicated, the jury awarded $225,000 for trial work and a total of $30,000 for appellate work.
Prior to submission of this issue, Mission Park's attorney objected to the proposed question,
specifically noting that the question failed to include the word "reasonable" as required by the Pattern
Jury Charge. The following dialogue took place at the charge conference:

 THE COURT: Okay. Then answer question 10. Question 10, the attorney's
fees.


 MR. RALLS: My objection to that is, Your Honor, that I think the Pattern
Jury Charge states that - if I can find it here real quickly.


 THE COURT: Which part do you think we didn't get right?


 MR. RALLS: Well, I think it needs to say reasonable - PJC 110.43 states -
the question reads, "What is a reasonable fee for the necessary
services of the attorneys in this case stated in dollars and
cents?" And this doesn't limit it to - it's really - I started to
say it's a comment on the weight of the evidence, but I think
since it says "if any," it may not be. But I think it needs to say
"reasonable."


 MR. CROSLEY: And, Your Honor, that instruction that he was reading from
is specifically for DTPA, whistle blower, and DTPA has that
specific language concerning attorney's fees. I - I did get this
instruction from the PJC but don't have my - I don't have my
copy of that with me.


 * * * * * * * * * * * * * * * * * * * * * * * * * 


 THE COURT: . . . I think it's unnecessary, actually. I've heard no testimony
that anything is unreasonable, other than there is a difference
of opinion, have I?


 MR. RALLS: I don't remember, Judge, quite frankly. I don't - I know that
I said somebody's fee was unreasonable, but - 


 THE COURT: No. You said an hourly rate is unreasonable.


 MR. RALLS: Oh, true.


After confirming with the Silvas' attorney that he had obtained the requested question from the
Pattern Jury Charge, the trial judge allowed the question to be submitted in the form requested by the
Silvas. As it turns out, the form requested by the Silvas does not correspond with any form question
in the Pattern Jury Charge. (1)

Preservation of Error 

 The Silvas contend that Mission Park's objection did not preserve its appellate complaint that
omission of the word "reasonable" allowed the jury to impermissibly speculate on the legal standard
for attorney's fees. Specifically, the Silvas argue that while Mission Park's objection identified the
objectionable matter - the failure to include the word "reasonable" - it did not state the grounds of
the objection as required by Rule 274. See Tex. R. Civ. P. 274 (requiring party objecting to charge
to point out objectionable matter and state the grounds of the objection). 

 The Silvas' attempted application of Rule 274 is too narrow under prevailing case law and
under the facts of this case. There is "but one test for determining if a party has preserved error in
the jury charge, and that is whether the party made the trial court aware of the complaint, timely and
plainly, and obtained a ruling." State Dep't of Highways & Pub. Transp. v. Payne, 838 S.W.2d 235,
241 (Tex. 1992). The objecting party need not make a full appellate argument at the charge
conference. See Ahlschlager v. Remington Arms Co., Inc., 750 S.W.2d 832, 833 (Tex. App.-
Houston [14th Dist.] 1988, writ denied). Rather, the objecting party merely has to put the trial court
on notice of the alleged error in a clear and timely manner. That is precisely what occurred in this
case. Mission Park's attorney clearly objected because the word "reasonable" was omitted, and
referred the court to the correct language from the Pattern Jury Charge. The trial court understood
the nature of the complaint as indicted by his comment that he had heard no testimony that the fees
were unreasonable. 

 This case is entirely different from the situation presented in Weidner, which the Silvas rely
upon for their waiver claim. See Weidner v. Sanchez, 14 S.W.3d 353 (Tex. App.-Houston [14th
Dist.] 2000, no pet. h.). In Weidner the appellants presented four objections to a specific jury
question on appeal. At trial they lodged only two objections that were not even remotely similar to
their appellate complaints. Id. at 368-69. In the instant case, Mission Park is lodging on appeal the
very same objection that it presented to the trial court. Mission Park's claim of error has been
preserved.

Fundamental Error

 Since all parties agree that the proper submission would have included the word "reasonable,"
we must determine whether the omission of this word is harmful error. Mission Park claims the error
is fundamental and requires reversal. In support of its argument Mission Park relies upon this court's
decision in Ballesteros v. Jones, 985 S.W.2d 485, 500 (Tex. App.-San Antonio 1998, pet. denied)
(en banc). In Ballesteros, a legal malpractice claim, the court's charge was deemed "clearly
erroneous" because it failed to limit the measure of damages to the amount the plaintiff could have
collected absent her attorney's malpractice. Id. The court did not determine this to be automatically
reversible error; rather, remand was required because the damages were unliquidated and liability was
contested.

 Harm analysis is also required in this case, particularly since the instant case concerns
recovery of attorney's fees. Although attorney's fees are recoverable as damages, they are not quite
the same as a broad claim for recovery of unliquidated damages. The amount of attorney's fees
recoverable is governed by specific factors listed in Disciplinary Rule 1.04. See Tex. Disciplinary
R. Prof'l Conduct 1.04, reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon
1998). The true issue, therefore, is not whether the error is fundamental and automatically reversible,
but whether the court's failure to include the word "reasonable" in the attorney's fee question failed
to provide the jury with enough guidance regarding fees such that the jury returned an improper
verdict. See Tex. R. App. P. 44.1 (permitting reversal when error probably caused rendition of
improper judgment). This question is best answered by determining whether there is legally and
factually sufficient evidence to support the jury's award of $255,000 in attorney's fees.

Evidence of Attorney's Fees 

 Richard Garcia, the attorney who originally represented the Silvas before referring the case
to trial counsel, testified that the Silvas signed a 40% contingent fee contract with him. He testified
that he and his sister, who is also a lawyer, had spent 220 hours working on the case, and that he
charges $100 per hour when he works on cases for an hourly rate. Tom Crosley, the Silvas' trial
attorney, testified that he agreed to represent the Silvas under the contingent fee agreement they had
entered into with Garcia. He stated that he and his partner had spent approximately 350 hours on the
case prior to trial. He testified that an hourly rate of $200 per hour was reasonable in San Antonio
for attorneys of his experience and expertise. He also testified that if he had charged an hourly fee,
$30,000 would be a reasonable fee for services at trial. 

 Mission Park's attorney testified that based on his own hourly fee and the number of hours
he had worked on the case, a reasonable fee in the case, from inception through trial, would be
approximately $30,000. He did acknowledge, however, that a $200 per hour fee in civil cases is
reasonable. Thus, even without language in the charge limiting the jury's award to a reasonable
amount, the jury had undisputed evidence before it that $100 to $200 was a reasonable hourly rate.
Although Mission Park's attorney stated that he spent considerably less hours on the file than did the
Silvas' attorneys, he did not challenge the amount of time Crosley and Garcia spent working on the
case. Thus, considering only the hourly fee figures provided by the Silvas attorneys, the jury would
have been justified in awarding $122,000 in attorney's fees through trial ($70,000 for Crosley's pre-trial services, $30,000 for Crosley's trial services, and $22,000 for Garcia's services). The jury
awarded $225,000 for trial fees, not $122,000, and Mission Park suggests that the $103,000
difference is based on either the contingent fee contract, or on Crosley's testimony that a "lodestar
approach" should be used in determining the amount of fees.

Contingent Fee Contract

 Mission Park contends the 40% contingent fee contract cannot serve as a basis for attorney's
fees. We agree for several reasons. First, in applying the contingent fee contract, we may consider
only Margarita's damages since she was the sole party entitled to recover attorney's fees. See New
Amsterdam Casualty Co. v. Texas Industries, Inc., 414 S.W.2d 914, 915 (Tex. 1967) (attorney's fees
not recoverable in tort claims unless provided by statute or contract); Swate v. Medina Community
Hosp., 966 S.W.2d 693, 701 (Tex. App.-San Antonio 1998, pet. denied) (same). The attorney's
fee question was predicated on Margarita Silva's breach of contract claim, for which she recovered
only $2,700. Application of the 40% contingent fee agreement would yield far less in attorney's fees
than was awarded by the jury. 

 The Silvas claim the contract and negligence claims were so intertwined and dependent on
the same set of facts that segregation of claims was not necessary, and that in any event, Mission Park
failed to object to the broad submission of attorney's fees, thereby waiving any complaint about
segregation. See Hruska v. First State Bank of Deanville, 747 S.W.2d 783, 785 (Tex. 1988) (holding
erroneous broad form submission of attorney's fees waived by failure to object to non-segregated
question); Paramount Nat'l Life Ins. Co. v. Williams, 772 S.W.2d 255, 266 (Tex. App.- Houston
[14th Dist.] 1989, writ denied) (noting that segregation not needed when proof of same facts required
for different claims). We agree that Mission Park never objected during trial or at the charge
conference that the Silvas failed to segregate between the contract and tort claims; nonetheless, we
can consider only Margarita Silva's damages. Even if we consider both her tort and contract
damages, application of a 40% contingent fee would result in far less than the amount awarded by
the jury. Accordingly, the contingent fee agreement cannot support the jury's award.

Lodestar Testimony

 Crosley testified without objection that courts often use a lodestar multiplying factor when
determining attorney's fees. During closing arguments he suggested that the jury apply a multiplier
of three to the $122,000 in fees incurred through trial under the hourly rates he and Garcia had
testified to, thus asking the jury to award $366,000 in fees. On appeal Mission Park complains that
while a lodestar approach may be used when the trial court awards fees, no Texas case has ever
permitted a jury to arbitrarily select a multiplier when deciding attorney's fees. 

 We agree that the lodestar testimony and argument cannot be used to support the jury's award
in this case. There was no testimony that a jury could appropriately use a multiplier to further
increase attorney's fees beyond the amount calculated using an hourly fee approach. Further, there
was no jury instruction regarding use of a multiplier, and there is no authority for its use in a case
such as this. Cf. General Motors Corp. v Bloyed, 916 S.W.2d 949, 960-61 (Tex. 1996) (discussing
strengths and weaknesses of lodestar method in class action suit). See also Brister, Proof of
Attorney's Fees in Texas, 24 St. Mary's L.J. 313, 326-31 (1993) (explaining lodestar approach and
the dearth of Texas cases applying this approach). 

Hourly Fee

 While Mission Park claims the jury charge was fundamentally flawed and requires a remand
on the attorney's fee issue, it argues alternatively that the fees awarded are excessive and requests
a remittitur. As discussed above, we do not believe the charge error is a fundamental error that
dictates automatic reversal. Thus we consider Mission Park's claim of excessiveness. 

 The amount of attorney's fees is a fact question for the jury to determine. Nonetheless, the
trial or appellate court has the duty to reduce an excessive fee. Argonaut Ins. Co. v. ABC Steel
Products Co., Inc., 582 S.W.2d 883, 889 (Tex. Civ. App.-Texarkana 1979, writ ref'd n.r.e.). The
standard of review in remittitur cases is sufficiency of the evidence. Snoke v. Republic Underwriters
Ins. Co., 770 S.W.2d 777, 777-78 (Tex. 1989); Larson v. Cactus Util. Co., 730 S.W.2d 640, 641
(Tex. 1987).

 The Silvas' attorneys testified without objection about their qualifications and expertise, the
time and labor they expended on the case, their customary hourly fees for such a case, and the
reasonableness of such fees. They also testified about the novelty of the case and the nature and
length of their relationship with the Silvas. They were subjected to minimal cross-examination that
did not challenge the reasonableness of their hourly fee. The testimony of the Silvas' attorneys
touched on nearly all of the factors listed in Disciplinary Rule 1.04. See Tex. Disciplinary R.
Prof'l Conduct 1.04, reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 1998).
 Mission Park's attorney testified about the amount of time he expended in defending against
the Silvas' claims and the amount of his hourly fee. Although these amounts were less than what the
Silvas' attorneys testified to, the jury did have before it some evidence of the basic difference between
the roles of plaintiff's attorneys and defense attorneys from which to justify the higher hourly rate.
Further, Mission Park's attorney did state that an hourly rate of $200 for a plaintiff's attorney was
reasonable in some cases. This testimony, taken as a whole, supports an award of fees based on the
hourly rates charged by Crosley and Garcia for the number of hours expended by them on the case.
 Based on the record, the jury could have properly awarded attorney's fees in the total amount of
$122,000 through trial. There is no specific challenge of the conditional award of appellate attorney's
fees. Accordingly, we suggest a remittitur of $103,000 in attorney's fees.

 We affirm the judgment of the trial court, conditioned on a remittitur of $103,000 in
attorney's fees. See Tex. R. App. P. 46.3 (authorizing appellate courts to suggest a remittitur). If
the Silvas fail to accept the remittitur within 20 days of the date of this opinion and judgment, the
judgment of the trial court will be reversed and the cause remanded for further proceedings consistent
with this opinion.

 

 Catherine Stone, Justice

DO NOT PUBLISH



1. Although Mission Park emphasizes that the Silvas= attorney is a member of the Pattern Jury Charge
Committee and that he Amisled@ the trial
court into submitting an erroneous question, we do not believe counsel
intentionally misdirected the court. 
There is nothing in the record to suggest that counsel=s conduct was anything other than an innocent mistake.