JAMES V. MAZUCA AND ASSOCIATES, Appellants,

v.

Walter SCHUMANN, Appellee.

No. 04–00–00228–CV.

Court of Appeals of Texas, San Antonio.

April 17, 2002.

Rehearing Overruled June 3, 2002.

Ellen B. Mitchell, Law Office of Ellen B.
Mitchell, P.C., Todd A. Prins, Law Offices

of Todd A. Prins and Thomas H. Crofts, Jr., Crofts & Callaway, P.C., San Antonio, for Appellant.

Stephen W. Boyd, Law Office of Stephen W. Boyd, P.C., Todd Lipscomb, Law Office of Robert W. Loree, San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, CATHERINE STONE, Justice, PAUL W. GREEN, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice.

## OPINION ON APPELLEE'S MOTION FOR RECONSIDERATION EN BANC

Opinion by: PHIL HARDBERGER, Chief Justice.

After reviewing the panel opinion and judgment en banc, the court withdraws the panel opinion and judgment issued May 16, 2001, issuing this opinion and judgment in their place.

This is a legal malpractice case. James Mazuca ("Mazuca"), a San Antonio attorney, was sued by his client, Walter Schumann ("Schumann"). The jury found that Mazuca was guilty of both professional negligence and violations of the Texas Deceptive Trade Practices Act ("DTPA"). The jury awarded Schumann $80,000 in damages for his negligence claim and $90,000 in additional damages plus $25,000 in attorney's fees for his DTPA claim.

We affirm the portion of the trial court's judgment awarding Schumann damages for his negligence claim. However, because we do not find any evidence of deceptive trade practices, we reverse the portion of the trial court judgment awarding Schumann damages and attorney's fees for his DTPA claim, and we render judgment that Schumann take nothing as to his DTPA claim.

### FACTUAL AND PROCEDURAL BACKGROUND

The underlying case is a car wreck that happened in Arizona on April 19, 1994. Schumann, a San Antonio resident, was injured. James Nuzum ("Nuzum"), an Arizona resident, was at fault. Schumann hired Mazuca to represent him in his claim against Nuzum. Mazuca originally filed suit against Nuzum and Farmers Insurance in Webb County, Texas. Farmers Insurance was brought into the suit on the basis of uninsured/underinsured coverage of its client, Schumann. This was a mistake. Schumann's coverage was with State Farm Mutual Automobile Insurance Company ("State Farm"). The suit was amended to name the proper defendant. Mazuca testified that counsel for State Farm indicated that State Farm wanted to remove the case to federal court, but that Mazuca avoided this by agreeing to transfer the case to Bexar County. Mazuca was never able to serve the defendant, Nuzum.

With the statute of limitations approaching, on January 5, 1996 Mazuca filed notice of nonsuit in Webb County. The nonsuit was taken without prejudice to refile and used boilerplate language, "Plaintiff does not desire to prosecute this matter further against Defendant(s) James E. Nuzum." While the wording had no effect on any subsequent event, it was not true and was to cause Mazuca trouble in the legal malpractice case. Mazuca testified that Schumann agreed to such a strategy in exchange for a settlement conference, however, Mazuca admitted that the term "nonsuit" may not have been used in their discussions. Schumann denies ever authorizing the nonsuit, or even being aware of Mazuca's actions in dropping the case.

Negotiations proved fruitless, and the Texas statute of limitations lapsed. Mazuca then contacted local counsel in Arizona who filed suit against Nuzum on behalf of Schumann. Arizona has a savings provision that under limited circumstances will permit the filing of a suit beyond the two-year statute of limitations. This did not work either. The Arizona trial court ultimately dismissed the suit as outside of the state's savings provision because Schumann's previous Texas case had been voluntarily dismissed, rendering the Arizona claim untimely filed.

Three years after the accident, on April 27, 1997, Mazuca filed a motion to nonsuit Schumann's claim against State Farm, the uninsured/underinsured carrier. Eleven months later, on March 3, 1998, after Schumann had hired other counsel, Mazuca wrote to Schumann to remind him that the statute of limitations was a little over a month away if Schumann wished to re-file his claim against State Farm. Schumann did not re-file against State Farm. Four years after the accident all statutes had run and the car wreck case ended.

Schumann then timely sued Mazuca for breach of the Texas Deceptive Trade Practices Act ("DTPA"), breach of warranty, negligence, and gross negligence. Schumann maintained, correctly, that he was prevented from pursuing his personal injury claims because the statute of limitations had run. He laid the fault, correctly, at Mazuca's feet. The jury found for Schumann on his negligence claim, assessing actual damages of $80,000. They also found for Schumann on his DTPA claim, finding that Mazuca had knowingly engaged in deceptive conduct, and assessed $90,000 in additional damages. Then they awarded Schumann $25,000 in attorney's fees. Schumann elected to recover under the DTPA, and the trial court entered a final judgment accordingly.

On appeal, Mazuca presents the following issues: (1) whether Schumann's DTPA claim is really a claim for legal malpractice; (2) whether Mazuca's mistaken interpretation of the Arizona statute is sufficient to support the jury's finding that Mazuca knowingly engaged in deceptive conduct; (3) whether the evidence is legally and factually sufficient to support the jury's finding that Schumann would have recovered and collected $80,000 from Nuzum had the original suit against Nuzum gone forward; and (4) whether the evidence is legally and factually sufficient to support the jury's finding that Mazuca was negligent in his representation of Schumann.

### STANDARD OF REVIEW

When considering a legal sufficiency complaint, the reviewing court must consider only the evidence and those inferences that tend to support the trier of fact's finding, disregarding all evidence and inferences to the contrary. *Lewelling v. Lewelling*, 796 S.W.2d 164, 166 (Tex. 1990); *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988). If there is any evidence of probative force in support of the ruling, the complaint must be overruled and the holding upheld. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If more than a scintilla of evidence exists to support the finding, the no evidence challenge must fail. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex. 1987). However, "[w]hen the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence" at all. *Kindred v. Con/ Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983).

A factual insufficiency point requires the reviewing court to assess all of the evidence and reverse only if the lower court's

finding is so against the great weight of the evidence as to be clearly wrong and manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986). Most importantly, a jury's verdict may not be disturbed because an appellate court would reach a different conclusion or wishes to substitute its judgment for that of the jury members'. *Jaffe Aircraft Corp. v. Carr*, 867 S.W.2d 27, 28 (Tex.1993).

## DISCUSSION

### A. DTPA v. Legal Malpractice

The seminal Texas case addressing DTPA actions in the context of attorney conduct is *Latham v. Castillo*. In *Latham*, the Texas Supreme Court examined a case in which an attorney represented to his clients that he was actively prosecuting their medical malpractice claim when he was not. *Latham v. Castillo*, 972 S.W.2d 66, 68 (Tex.1998). Latham argued, as Mazuca does, that the DTPA claim was in reality a legal malpractice claim. *Latham*, 972 S.W.2d at 69. However, to recast a "DTPA claim as merely a legal malpractice claim would subvert the Legislature's clear purpose in enacting the DTPA—to deter deceptive business practices." *Id.* "It is the difference between negligent conduct and deceptive conduct. To recast a [negligence] claim as one for legal malpractice is to ignore this distinction." *Id.* The Texas Supreme Court held that Latham engaged in unconscionable action through his active misrepresentations to the family, and that his unconscionable action was the "producing cause of actual damages." *Id.*

 Mazuca was clearly negligent. Whether he acted unconscionably is less certain. "Attorneys can be found to have engaged in unconscionable conduct by the way they represent their clients." *Id.* at 68. However, given the likelihood that personal jurisdiction was not a possibility over Nuzum in Texas, Mazuca's decision to

nonsuit the Texas case in favor of mediation, which could have settled the case, does not fit the definition of unconscionability. As the nonsuit was filed without prejudice, he could have filed it at any time before the statute ran.

 Unconscionable is defined under the DTPA to mean an act or practice that:

(A) takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or

(B) results in a gross disparity between the value received and consideration paid, in a transaction involving transfer of consideration.

TEX. BUS. & COM.CODE ANN. § 17.45(5) (Vernon 1987). The 1995 amendments to the DTPA allow an attorney to be held liable for an unconscionable action or course of action that cannot be characterized as advice, judgment, or opinion. TEX. BUS. & COM.CODE ANN. § 17.49(c)(3). It further requires a showing that the resulting unfairness was "glaringly noticeable, flagrant, complete, and unmitigated...." *Chastain v. Koonce*, 700 S.W.2d 579, 584 (Tex.1985). In contrast, "[a] claim based upon the failure to exercise that degree of care, skill and diligence that a lawyer of ordinary skill and knowledge commonly possesses and exercises, despite its label, is a malpractice claim." *Kahlig v. Boyd*, 980 S.W.2d 685, 689 (Tex.App.-San Antonio 1998, pet. denied).

Filing a motion for nonsuit of the claim against Nuzum with sufficient time remaining under the statute of limitations to refile the case in a more appropriate venue does not fit the *Chastain* definition of unconscionable. There was time to refile, and in this case, Mazuca was actively attempting to reach a settlement with Nuzum. His mistake was in not refiling the suit in an appropriate venue before the

statute ran. Even after it ran, Mazuca testified that he believed in good faith, based on consultations with local counsel in Arizona, that Arizona's savings provision would allow Schumann to bring suit against Nuzum after the customary two-year statute of limitations had expired. Mazuca was wrong. He may have believed that he had more than two years to file the suit in Arizona, but he did not. This mistake ultimately cost Schumann the ability to file suit against Nuzum in Arizona, where he would have been able to exercise personal jurisdiction. Such a mistake is the proximate cause of Schumann's damages and satisfies the elements of negligence, but there is no evidence of the deceptive conduct required under *Latham*. *Latham*, 972 S.W.2d at 69; *see also Ballesteros v. Jones*, 985 S.W.2d 485, 498 (Tex. App.-San Antonio 1998, pet. denied). There is no evidence of an affirmative misrepresentation by Mazuca to his client. *Latham*, 972 S.W.2d at 69. Schumann argues that Mazuca's representation to the court that his client "does not desire to prosecute this matter further ..." was sufficient to support a DTPA claim. This assertion fails for a number of reasons.

The statement to the court is not an actionable misrepresentation because under the DTPA, a misrepresentation must be one of material fact. *Church & Dwight Co. v. Huey*, 961 S.W.2d 560, 567 (Tex. App.-San Antonio 1997, pet. denied). Mazuca's written motion to the court was not a misrepresentation of a material fact. The words were not true, but they had no legal effect. The suit could have been filed again the next day. The words were not material. What was material was that the nonsuit was taken without prejudice. The words did not keep Mazuca from refiling the suit in an appropriate venue. Nor was it a misrepresentation to Schumann. Schumann was not aware of it having been made. He did not take or refrain from taking any action based on this statement.

■ A DTPA plaintiff must demonstrate that an actionable misrepresentation was a producing cause of his damages. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex.1995). There must be an "unbroken causal connection" between the actionable misrepresentation and the injury. *Id.* at 481; *see also Cianfichi v. White House Motor Hotel*, 921 S.W.2d 441, 443 (Tex.App.-Houston [1st Dist] 1996, writ denied). While a plaintiff is not required to prove reliance as an element of recovery, reliance may be a factor in determining whether a misrepresentation was a producing cause of damages. *Weitzel v. Barnes*, 691 S.W.2d 598, 600 (Tex.1985); *Cianfichi*, 921 S.W.2d at 443.

It is apparent from Schumann's own testimony that he in no way relied on Mazuca's statement to the court regarding the nonsuit. Schumann testified that he was not even aware of the statement until his own lawyer showed it to him at trial. Schumann's argument that the statement was a producing cause of harm because it led the Arizona court to dismiss the case against Nuzum is unfounded. The language employed by Mazuca to secure the nonsuit was not the pivotal factor in the Arizona court's decision—it was the nonsuit itself, a voluntary dismissal, that caused the court to rule as it did. Mazuca's filing of the nonsuit, at most, demonstrated the "failure to exercise that degree of care, skill, and diligence that a lawyer of ordinary skill and knowledge commonly possesses and exercises," giving rise to a malpractice or negligence claim. *Kahlig v. Boyd*, 980 S.W.2d at 689.

Mazuca testified that, because at the time, there did not appear to be any way to pursue a claim against Nuzum, he nonsuited the claim against State Farm. How-

ever, according to Schumann, this nonsuit was also done without his knowledge or consent. Making an affirmative representation regarding the status of a lawsuit is deception. *Latham*, 972 S.W.2d at 69. But Mazuca made no misrepresentations, only bad judgments. Taking Schumann's testimony as the truth, Mazuca's silence amounts to nothing more than potentially negligent omissions, but falls short of the affirmative deception required by the DTPA.

Points one and two of Mazuca's appeal are sustained and the judgment awarding Schumann damages based on his DTPA claims is reversed, and judgment is rendered that Schumann take nothing on his DTPA claims, and the attendant attorney's fees.

### B. Recovery From Nuzum

■ Mazuca's third point of error complains that the evidence is legally and factually insufficient to support the jury's finding that Schumann would have recovered and collected $80,000 from Nuzum had the original suit gone forward.[1] Although Texas law does require Schumann to prove that he could have recovered and collected damages, the law focuses on the collectibility of the judgment, not the person or entity from whom the money actually would be collected. *See Schlosser v. Tropoli*, 609 S.W.2d 255, 257 (Tex.Civ. App.-Houston [14th Dist.] 1980, writ ref'd n.r.e.) (noting evidence of collectibility included evidence that defendant was insured); *Patterson & Wallace v. Frazer*, 79 S.W. 1077, 1083 (Tex.Civ.App.1904, no writ) (holding must show that plaintiff would have recovered judgment and col-

lected anything on it); Comm. on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges PJC 84.2 (1998) (noting Texas law requires plaintiff to show that he would have made a recovery and that it would have been collectible). In *Schlosser*, the appellate court relied on the defendant's insurance coverage as some evidence of collectibility. 609 S.W.2d at 257.

In a letter introduced into evidence from Mazuca to an attorney in Arizona, Mazuca states, "The Defendant does have $100,000 of liability coverage and Mr. Schumann has $100,000 underinsured motorist coverage." Mazuca further testified that he had some indication that the insurance coverage existed and noted the coverage in his file. Mazuca testified that he noted the existence of insurance coverage based on representations that had been made to him.

■ Mazuca made an unequivocal statement in a letter that Nuzum had insurance coverage. He made the same notation in his file based on representations that had been made to him. The jury is entitled to rely on the evidence as it was presented. The statement regarding coverage in the letter, and Mazuca's testimony that he had some indication that insurance coverage existed based on representations made to him, is sufficient evidence to support the jury's finding that Schumann could have recovered and collected on a judgment against Nuzum. Mazuca's third point of error is overruled.

### C. Mazuca's Negligence

---

1. The jury charge on this issue read as follows:

 *What sum of money if paid now in cash, would fairly and reasonably compensate Walter Schumann for his injuries, if any, that resulted from the April 19, 1994 colli-*sion in question? ... You are instructed to award the sum, if any, that Walter Schumann *would have recovered and collected* from James Nuzum as a result of the April 19, 1994 collision had the suit been properly prosecuted.

Mazuca's fourth point of error complains that the evidence is not legally or factually sufficient to support the jury's finding that Mazuca's negligence was the proximate cause of Schumann's damages. Mazuca's primary argument is that Schumann failed to establish the proper standard of care for an attorney. Although the general rule requires expert testimony to establish the standard of care in a legal malpractice action, there is an exception to this general rule. Expert testimony is not required if the attorney's lack of care and skill is so obvious that the trier of fact can find negligence as a matter of common knowledge. The most common example of a case requiring no expert testimony is one in which an attorney allows the statute of limitations to run on a client's claim. *See, e.g., Degnars v. Kimmel, Weiss & Carter, P.A.*, No. 95C–10–245, 1999 WL 463711, at *2 (Del.Super.Ct. Mar.17, 1999); *Allyn v. McDonald*, 112 Nev. 68, 910 P.2d 263, 265 (1996) (citing case law from two other states in support); *Little v. Matthewson*, 114 N.C.App. 562, 442 S.E.2d 567, 571 (1994) (citing case law from five other states in support), *aff'd*, 340 N.C. 102, 455 S.E.2d 160 (1995); *Barth v. Reagan*, 190 Ill.App.3d 516, 522, 546 N.E.2d 87, 91, 137 Ill.Dec. 463, 467 (1989), *aff'd*, 139 Ill.2d 399, 564 N.E.2d 1196, 151 Ill.Dec. 534 (Ill. 1990); *Carlson v. Morton*, 229 Mont. 234, 240, 745 P.2d 1133, 1137 (Mont.1987); *Gillaizeau v. Marvin M. Mitchelson, P.C.*, No. 83 Civ. 4367(JFK), 1985 WL 216, at *4 (S.D.N.Y. Jan.24, 1985); *O'Neil v. Bergan*, 452 A.2d 337, 341–42 (D.C.1982) (citing case law from ten other states in support). Missing the statute of limitations is a classic example of negligence that any layperson can understand. No expert testimony is necessary in such cases.

Even if expert testimony was required, Mazuca unequivocally stated in a letter to Schumann, "It was my responsibility to present your case in a timely manner...." When considering a legal sufficiency complaint, we consider only the evidence and inferences that tend to support the jury's finding, disregarding all evidence and inferences to the contrary. *Lewelling v. Lewelling*, 796 S.W.2d 164, 166 (Tex.1990). The jury could have inferred from Mazuca's statement that the standard of care required Mazuca to file Schumann's case in a timely manner. This is the inference that supports the jury's finding that Mazuca breached the standard of care and is the inference we are required to consider under the applicable standard of review. Therefore, Mazuca's statement is sufficient evidence of the standard of care. Mazuca's fourth point of error is overruled.

### CONCLUSION

Mazuca made many mistakes in his representation of Schumann, but none that reach the level of the unconscionable and deceptive acts as required by the DTPA. This court sustains Mazuca's first two points of error, and we reverse the trial court's judgment in favor of Schumann as to his DTPA claims and render judgment that Schumann take nothing as to his DTPA claims and attendant attorney's fees. The judgment is reformed to delete the DTPA damages, leaving Schumann with $80,000 in actual damages for his negligence claim. We affirm the trial court judgment as reformed.

Concurring opinion by: SANDEE BRYAN MARION, Justice.

In light of this court's prior decisions requiring expert testimony to establish the standard of care in a legal malpractice case, I am not prepared to hold that there is an exception to that general rule. *See Longaker v. Evans*, 32 S.W.3d 725 (Tex. App.-San Antonio 2000, pet. dism'd); *Hall*

*v. Rutherford,* 911 S.W.2d 422 (Tex.App.-San Antonio 1995, writ denied). I do believe, however, there is sufficient evidence to support the jury's finding of Mazuca's negligence.

Because legal malpractice cases are governed by negligence principles, there must be proof of a duty, a breach of that duty and that the breach proximately caused damages. *Longaker,* 32 S.W.3d at 735. Two experts testified in this case. Mazuca, board certified by the Texas Board of Legal Specialization in personal injury, established his duty to Schumann in his letter, in which he admitted, "It was my responsibility to present your case in a timely manner and I will accept responsibility for any delay or damage to your case because of this error." Schumann's expert, Larry Bruner, established that Mazuca breached his duty and this breach proximately caused Schumann's damages. Accordingly, I concur with the majority's decision to affirm the trial court's judgment as reformed.

Dissenting opinion by: KAREN ANGELINI, Justice, *joined by Justice* PAUL W. GREEN and Justice SARAH B. DUNCAN.

I respectfully dissent, in part, to the majority's opinion.

Mazuca contends that the evidence is legally and factually insufficient to support the jury's finding that Schumann would have recovered and collected $80,000 from Nuzum had the original suit gone forward.[1] In an attorney malpractice action, based on negligence, the plaintiff must show that "but for" the attorney's negli-

gence, he or she would be entitled to judgment. *Rodriguez v. Sciano,* 18 S.W.3d 725, 727 (Tex.App.-San Antonio 2000, no pet.). Furthermore, the proper damages inquiry focuses on the amount of damages recoverable and collectible from the defendant in the underlying action, had the suit been properly prosecuted. *See Cosgrove v. Grimes,* 774 S.W.2d 662, 666 (Tex.1989); *Ballesteros v. Jones,* 985 S.W.2d 485, 489 (Tex.App.-San Antonio 1998, pet. denied). These requirements in proving a legal malpractice case are commonly known as the "suit within a suit." *See Latham,* 972 S.W.2d at 69; *Ballesteros,* 985 S.W.2d at 489.

Reviewing the evidence in this case, Schumann did not sustain his burden of proving a judgment against Nuzum was collectible. Schumann offered no evidence of Nuzum's *solvency.* And, although Mazuca testified that he *believed* Nuzum was insured for $100,000, he was never able to determine the accuracy of this belief. This amounts to no evidence.

Although Schumann may have been able to collect on a claim against his own uninsured/underinsured carrier, State Farm, a question as to State Farm was not submitted to the jury. The jury question only inquired what amount "Schumann would have recovered and collected from James Nuzum as a result of the April 19, 1994 collision had the suit been properly prosecuted." Further, the evidence is undisputed that, although Mazuca nonsuited State Farm, he did so before the statute of limitations ran. And, after Schumann had engaged a new lawyer, Mazuca reminded him that he needed to re-file against State

---

1. The jury charge on this issue read as follows:

 What sum of money if paid now in cash, would fairly and reasonably compensate Walter Schumann for his injuries, if any, that resulted from the April 19, 1994 colli-

 sion in question? ... You are instructed to award the sum, if any, that Walter Schumann would have recovered and collected from James Nuzum as a result of the April 19, 1994 collision had the suit been properly prosecuted.

Farm before the statute of limitations ran if he wanted to preserve his claim against State Farm. Schumann, however, did not re-file against State Farm. Thus, there is no evidence in the record upon which the jury could have based a negligence finding against Mazuca as to State Farm and such an issue, if submitted to the jury, would have been improper. In any event, the jury was only asked the collectability question as to Nuzum and not State Farm. I would sustain Mazuca's third issue.

Mazuca contends that the evidence is legally and factually insufficient to support the jury's finding that Mazuca's negligence was the proximate cause of Schumann's damages. Mazuca's primary argument is that Schumann failed to establish the proper standard of care for an attorney.

An attorney is required to exercise reasonable and ordinary care and diligence in applying his skill and knowledge to his client's cause. *Kahlig v. Boyd,* 980 S.W.2d 685, 689 (Tex.App.-San Antonio 1998, pet. denied). An attorney is held to the standard of care that would be exercised by a reasonably prudent attorney. *Longaker v. Evans,* 32 S.W.3d 725, 735 (Tex.App.-San Antonio 2000, pet. filed). Expert testimony from an attorney is required to establish the standard of care. *Hall v. Rutherford,* 911 S.W.2d 422, 425 (Tex.App.-San Antonio 1995, writ denied). Larry Bruner was Schumann's expert. After testifying to his qualifications as an attorney who practices personal injury law, Bruner testified as follows:

Q. Now, based on your review of the file in this case, do you have an opinion, based on your experience, your training and a reasonable degree of legal probability, that Mr. Mazuca's actions or nonactions proximately caused damage to Mr. Schumann?

A. Yes, I do.

Q. And what is that opinion?

A. Well, my opinion is that—that his actions or inactions proximately caused the damages to Mr. Schumann.

Q. Do you have an opinion as to whether Mr. Mazuca failed to meet the standard of care for an attorney in the 1994–1996 time frame in representing a client in a personal injury action in Bexar or Webb County, Texas?

A. You asked me if I had an opinion?

Q. Right.

A. And the answer is yes.

Q. And what is your opinion?

A. And my opinion is that he breached the standard of care.

In his testimony, Bruner failed to properly articulate the standard of care. He merely concluded that Mazuca breached the standard of care without stating what the standard of care is. This amounts to no evidence that Mazuca breached the standard of care. Mazuca preserved this "no evidence" issue in his motion for directed verdict and motion for judgment n.o.v.

Schumann claims that he proved Mazuca's negligence by introducing a letter Mazuca wrote to Schumann in which Mazuca admitted to negligence. In his letter to Schumann, Mazuca states: "It was my responsibility to present your case in a timely manner and I will accept responsibility for any delay or damage to your case because of this error." Although Mazuca expressed his feelings of responsibility, he did not admit to legal liability. A conciliatory letter from a defendant attorney in a legal malpractice case does not relieve the plaintiff of his burden to properly prove a breach of the applicable standard of care. I would find Schumann failed to carry his burden or proving Mazuca's actions fell

below the standard of care and would, accordingly, sustain Mazuca's fourth issue.