DRAGON FISH, LLC d/b/a
Motif Modern Living,
et al., Appellants,

v.

SANTIKOS LEGACY, LTD.,
et al., Appellees.

No. 04–11–00682–CV.

Court of Appeals of Texas,
San Antonio.

May 2, 2012.

Andrew J. Sarne, Kane Russell Coleman & Logan PC, Houston, TX, Dan Pozza, Law Offices of Dan Pozza, Barry Snell, Bayne, Snell & Krause, L.L.P., Elliott S. Cappuccio, Lance H. Beshara, Pulman, Cappuccio, Pullen and Benson, LLP, Mikal C. Watts, Mark A. Fassold, Watts Guerra & Craft, L.L.P., San Antonio, TX, for Appellant.

Gerald T. Drought, Martin & Drought, P.C., San Antonio, TX, Wade C. Crosnoe, Thompson, Coe, Cousins & Irons, L.L.P., Austin, TX, Hollye C. Fisk, Fisk & Fiedler, P.C., Dallas, TX, for Appellee.

Sitting: CATHERINE STONE, Chief Justice, SANDEE BRYAN MARION, Justice, REBECCA SIMMONS, Justice.

## OPINION

Opinion by: CATHERINE STONE, Chief Justice.

Five tenants and their lease guarantors sued the developers of the Legacy Shopping Center and their agents asserting numerous causes of action. The claims were based on representations by the developers and their agents that the Legacy Shopping Center would be a "lifestyle center" and include upscale residential development which arguably would result in a higher traffic volume. The trial court granted partial summary judgment in favor of the developers and their agents based on a disclaimer of reliance provision contained in the leases, and the trial court and the parties agreed to an interlocutory appeal of the ruling. On appeal, the tenants and guarantors contend the disclaimer of reliance provision does not bar their claims, and claim the trial court erred in striking portions of their summary judgment evidence. We affirm the trial court's order.

## BACKGROUND

The developers, Santikos Legacy, Ltd., Santikos Income Property, LLC, and John L. Santikos (collectively "Santikos"), and the developers' agents, C. Hodges & Associates, PLLC d/b/a Hodges & Associates, C. Hodges Development, Inc., and Charles M. Hodges (collectively "Hodges"), do not dispute that the summary judgment evidence established that representations were made regarding the Legacy Shopping Center being constructed as a "lifestyle center," to include office space, retail

development, restaurants, entertainment (a Santikos movie theater), and multi-family residences. The "lifestyle center" as represented would allegedly ensure a higher volume of traffic than other shopping centers like power centers which rely on big box retailers to draw traffic. Summary judgment evidence was also presented, however, to establish that the developers knew the multi-family residences would not be included in the development at the time each of the following tenants and their guarantors signed their leases/guaranties: (1) Dragon Fish, LLC d/b/a Motif Modern Living; (2) Greektown Restaurants, Ltd. d/b/a Papouli's Greek Grill Restaurants;[1] (3) Spa Jane, LLC; (4) All About Shoes, Inc.; and (5) Team Spears, LLC d/b/a Sharkey's Cuts for Kids.

Hodges and Santikos moved for summary judgment based on the following provision contained in each of the leases:

> "*Reliance.* LANDLORD AND TENANT HEREBY ACKNOWLEDGE THAT THEY ARE NOT RELYING UPON ANY BROCHURE, RENDERING, INFORMATION, REPRESENTATION OR PROMISE OF THE OTHER, OR AN AGENT OR BROKER, IF ANY, EXCEPT AS MAY BE EXPRESSLY SET FORTH IN THIS LEASE.

Although the trial court initially denied the motions, the trial court subsequently granted Hodges' motion to reconsider based on the Texas Supreme Court's decision in *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of America,* 341 S.W.3d 323 (Tex.2011).

### DISCUSSION

Although the tenants/guarantors subdivide their first issue into seven sub-issues, several of the sub-issues simply address reasons the tenants/guarantors believe the disclaimer of reliance provision is unenforceable under the legal standards pronounced by the Texas Supreme Court in the following trio of cases: *Italian Cowboy Partners, Ltd.,* cited above, *Forest Oil Corp. v. McAllen,* 268 S.W.3d 51 (Tex. 2008), and *Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171 (Tex.1997). The tenants/guarantors also assert that the disclaimer of reliance provision is ambiguous. In addition to asserting that the disclaimer of reliance provision is unenforceable, the tenants/guarantors also argue: (1) the lease provision does not bar recovery against the developers and their agents who were not parties to the lease; (2) the lease provision does not bar recovery by the guarantors who were not parties to the lease; (3) the lease provision is not applicable to claims based on misrepresentations made after the lease was signed; and (4) the lease provision is not applicable to DTPA claims that do not include reliance as an element of the claim. Finally, the tenants/guarantors argue that the trial court erred in excluding portions of their summary judgment evidence.

### A. Enforceability of Disclaimer of Reliance Provision

#### 1. *Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171 (Tex.1997)

In *Schlumberger Tech. Corp. v. Swanson,* a dispute arose over a joint venture formed to mine diamonds in South Africa. 959 S.W.2d at 173–74. Schlumberger was a member of the joint venture, and John and George Swanson were to be paid a royalty on the diamonds mined by the joint venture. *Id.* at 173. A dispute arose, and in settlement negotiations between Schlumberger and the Swansons, Schlumberger represented that the sea-diamond

---

1. Papouli's signed its lease before the other tenants, but waived a right to abate the term of its lease around the same time the other tenants signed their leases.

project was neither technologically feasible nor commercially viable. *Id.* at 174. Eventually, the Swansons agreed to sell their interest in the project for $814,000. *Id.* In connection with the settlement, the Swansons signed a release which specifically stated that they were not relying on any statement or representation made by Schlumberger but were relying on their own judgment, and that they had been represented by counsel who explained the entire contents and legal consequences of the release to them. *Id.* Schlumberger later sold its interest to the remaining members of the joint venture for a substantial profit. *Id.*

The Swansons sued Schlumberger asserting it fraudulently induced them to sell their interest at an undervalued price based on misrepresentations regarding the project's viability and value. *Id.* A jury found in favor of the Swansons; however, the trial court granted a judgment notwithstanding the verdict in favor of Schlumberger. *Id.* at 174–75. The court of appeals reversed and rendered judgment in favor of the Swansons, holding the disclaimer of reliance provision in the release did not preclude the fraudulent inducement claim. *Id.* at 173.

The Texas Supreme Court first assumed, based on the evidence presented, that Schlumberger misrepresented the project's technological feasibility and commercial viability and that such misrepresentations were actionable as fraudulent inducement. *Id.* at 178. Schlumberger argued that if a party is represented by independent legal counsel in negotiating a release, the presence of counsel should always preclude a claim that the release was fraudulently induced. *Id.* The Texas Supreme Court rejected this bright-line test. *Id.*

After examining conflicting authorities on whether a disclaimer of representations was enforceable, the court asserted:

> Parties should be able to bargain for and execute a release barring all further dispute. This principle necessarily contemplates that parties may disclaim reliance on representations. And such a disclaimer, where the parties' intent is clear and specific, should be effective to negate a fraudulent inducement claim. As an example, a disclaimer of reliance may conclusively negate the element of reliance, which is essential to a fraudulent inducement claim. The question is under which circumstances such disclaimers are binding.

*Id.* at 179 (citations omitted). The court concluded "The contract and the circumstances surrounding its formation determine whether the disclaimer of reliance is binding." *Id.* The court noted the following circumstances were present in the case in question: (1) the parties were attempting to put an end to their deal; (2) the parties were represented by highly competent and able legal counsel; (3) the parties were dealing at arm's length; (4) both Schlumberger and the Swansons were knowledgeable and sophisticated business players; and (5) the Swansons continued to disagree with Schlumberger regarding the feasibility and value of the project throughout the negotiations and the release recited that there remained considerable doubt and disagreement about the parties' claims. *Id.* at 180. The court then concluded that in those particular circumstances and in clear language, "the Swansons unequivocally disclaimed reliance upon representations by Schlumberger about the project's feasibility and value" in agreeing to the following language in the release:

> [E]ach of us [the Swansons] expressly warrants and represents and does here-

by state ... and represent ... that no promise or agreement which is not herein expressed has been made to him or her in executing this release, and that **none of us is relying upon any statement or representation of any agent of the parties being released hereby. Each of us is relying on his or her own judgment** and each has been represented by Hubert Johnson as legal counsel in this matter. The aforesaid legal counsel has read and explained to each of us the entire contents of this Release in Full, as well as the legal consequences of this Release....

*Id.* (emphasis in original). The court held that the disclaimer of reliance was binding, and the Swansons were precluded from claiming they were fraudulently induced. *Id.* at 180–81.

2. *Forest Oil Corp. v. McAllen,* 268 S.W.3d 51 (Tex.2008)

The Texas Supreme Court next considered the enforceability of a waiver-of-reliance provision in *Forest Oil Corp. v. McAllen,* 268 S.W.3d 51 (Tex.2008). In that case, the parties also entered into a settlement agreement resolving their royalty and nondevelopment disputes; however, the parties reserved the right to arbitrate any environmental liability, surface damages, personal injury, or wrongful death claims. *Id.* at 53–54. The settlement agreement expressly disclaimed reliance "upon any statement or any representation of any agent of the parties," and also stated, "Each of [us] is relying on his, her or its own judgment." *Id.* at 54 & n. 4.

McAllen subsequently sued Forest Oil to recover for environmental damages caused by Forest Oil's burying of highly toxic mercury-contaminated material. *Id.* Forest Oil sought to compel arbitration under the settlement agreement; however, McAllen asserted the arbitration provision was induced by fraud and unenforceable.

*Id.* at 54–55. Specifically, McAllen argued that Forest Oil assured McAllen that no environmental pollutants or contaminants existed on the property despite Forest Oil's knowledge of the buried material. *Id.* at 55. The trial court denied Forest Oil's motion to compel, and the appellate court affirmed. *Id.*

The Texas Supreme Court held that its decision in *Schlumberger* controlled the outcome of the case. *Id.* at 56. In discussing *Schlumberger,* the court noted:

> Our analysis in *Schlumberger* rested on the paramount principle that Texas courts should uphold contracts negotiated at arm's length by "knowledgeable and sophisticated business players" represented by "highly competent and able legal counsel," a principle that applies with equal force to contracts that reserve future claims as to contracts that settle all claims. Essentially, *Schlumberger* holds that when knowledgeable parties expressly discuss material issues during contract negotiations but nevertheless elect to include waiver-of-reliance and release-of-claims provisions, the Court will generally uphold the contract. An all-embracing disclaimer of any and all representations, as here, shows the parties' clear intent.

*Id.* at 58. The court cautioned that courts "must always examine the contract itself and the totality of the surrounding circumstances when determining if a waiver-of-reliance provision is binding." *Id.* at 60. Because courts of appeals appeared to disagree over which *Schlumberger* factors were most relevant to its analysis, the court clarified that its reasoning was guided by the following factors:

> (1) the terms of the contract were negotiated, rather than boilerplate, and during negotiations the parties specifically discussed the issue which became the topic of the subsequent dispute;

(2) the complaining party was represented by counsel;

(3) the parties dealt with each other in an arm's length transaction;

(4) the parties were knowledgeable in business matters; and

(5) the release language was clear.

*Id.* The court held the disclaimer of reliance was enforceable, noting:

> After-the-fact protests of misrepresentation are easily lodged, and parties who contractually promise not to rely on extra-contractual statements—*more than that, promise that they have in fact not relied upon such statements*—should be held to their word. Parties should not sign contracts while crossing their fingers behind their backs.... It is not asking too much that parties not rely on extra-contractual statements that they contract not to rely on (or else set forth the relied-upon representations in the contract or except them from the disclaimer). If disclaimers of reliance cannot ensure finality and preclude post-deal claims for fraudulent inducement, then freedom of contract, even among the most knowledgeable parties advised by the most knowledgeable legal counsel, is grievously impaired.

*Id.* at 60–61 (emphasis in original).

3. *Italian Cowboy Partners, Ltd. v. Prudential Insurance Company of America,* 341 S.W.3d 323 (Tex.2011).

In *Italian Cowboy Partners, Ltd.,* the Texas Supreme Court noted that it recognized decades ago that a merger clause "does not waive the right to sue for fraud should a party later discover that the representations it relied upon before signing the contract were fraudulent." 341 S.W.3d at 327. The principal issue presented in *Italian Cowboy Partners* was whether "disclaimer-of-representations language within a lease contract amounts to a stan-dard merger clause, or also disclaims reliance on representations, thus negating an element of the petitioner's claim for fraudulent inducement of that contract." *Id.* at 327–28.

Jane and Francesco Secchi, owners and operators of a restaurant, Italian Cowboy, terminated a lease because of a persistent gas odor, and filed suit against the landlord, Prudential Insurance Company of America, and its property manager, Prizm Partners. *Id.* at 328. The Secchis sought to rescind the lease and recover damages for fraud and breach of the implied warranty of suitability. *Id.* During lease negotiations, Fran Powell, Prizm's management director, told the Secchis the restaurant building the Secchis were interested in leasing was practically new, was in perfect condition, and had no problems whatsoever. *Id.* When the Secchis' general contractor in charge of remodeling was told by another tenant that the location was plagued with a severe odor, the Secchis confronted Powell, who again denied any problems and stated it was the "first time" she had ever heard this information. *Id.* at 329. The Secchis subsequently learned from the former manager of the restaurant which previously leased the space that the sewer gas odor was present during their tenancy, and Powell knew about the odor and was present on the premises when the smell was present. *Id.* at 330. Powell had personally characterized the odor in the prior restaurant as "horrid, "ungodly," and a smell that would make "one gag." *Id.* at 330–31.

The trial court ruled in favor of the Secchis, finding Powell had superior knowledge during the lease negotiations and made statements of fact, known to be false when made, that were relied upon by the Secchis in signing the lease. *Id.* at 331. The trial court further found that

Powell's conduct and attempted cover-up evidenced consciousness of guilt of her pre-lease misrepresentations. *Id.*

On appeal, Prudential argued that the following provisions contained in the Secchis' lease negated the reliance element of the Secchis' claim:

> **14.18 Representations.** Tenant acknowledges that neither Landlord nor Landlord's agents, employees or contractors have made any representations or promises with respect to the Site, the Shopping Center or this Lease except as expressly set forth herein.

> **14.21 Entire Agreement.** This lease constitutes the entire agreement between the parties hereto with respect to the subject matter hereof, and no subsequent amendment or agreement shall be binding upon either party unless it is signed by each party . . . . .

*Id.* at 328, 331. The Texas Supreme Court first noted that the parties disputed whether the lease provisions constituted a disclaimer or simply amounted to a merger clause which would not disclaim reliance. *Id.* at 333. "The question of whether an adequate disclaimer of reliance exists is a matter of law." *Id.* "In construing a contract, a court must ascertain the true intentions of the parties as expressed in the writing itself," harmonizing and giving effect to "all the provisions of the contract so that none will be rendered meaningless." *Id.*

Prudential argued that the language in 14.18 constituted a disclaimer, asserting that Italian Cowboy "impliedly agreed not to rely on any external representations by agreeing that no external representations were made." *Id.* at 334. The Texas Supreme Court disagreed, noting, "Standard merger clauses, however, often contain language indicating that no representations were made other than those contained in the contract, without speaking to

reliance at all." *Id.* After reviewing the contractual language, the Texas Supreme Court concluded that the only reasonable interpretation of the contract was that the parties "intended nothing more than the provisions of a standard merger clause, and did not intend to include a disclaimer of reliance on representations." *Id.* The court distinguished the language used from that used in *Schlumberger* and *Forest Oil* in which the parties expressly disclaimed reliance, asserting:

> There is a significant difference between a party disclaiming its *reliance* on certain representations, and therefore potentially relinquishing the right to pursue any claim for which reliance is an element, and disclaiming the *fact* that no other representations were made. In addition to differences in the contract's language, the facts surrounding this lease agreement differ significantly from those in *Schlumberger* and *Forest Oil*, where we could more easily determine that the parties intended once and for all to resolve specific disputes. A lease agreement, as here, which is the initiation of a business relationship, should be all the more clear and unequivocal in effectively disclaiming reliance and precluding a claim for fraudulent inducement, lest we "forgive intentional lies regardless of context."

*Id.* at 335 (emphasis in original) (citations omitted). The court emphasized that the term "rely" did not appear in any form in the *Italian Cowboy* lease unlike the settlement documents in *Schlumberger* and *Forest Oil. Id.* at 336. The court held as a matter of law that the lease did not disclaim reliance, and thus did not defeat the fraudulent inducement claim. *Id.* at 336–37.

4.  Analysis

We conclude that the disclaimer language in the lease in the instant case is more similar to the language considered in *Schlumberger* and *Forest Oil* than the language in *Italian Cowboy*. The relevant language is set forth as follows:

| Legacy Lease: | Schlumberger | Forest Oil | Italian Cowboy |
|---|---|---|---|
| *Reliance.* LANDLORD AND TENANT HEREBY ACKNOWLEDGE THAT THEY ARE NOT RELYING UPON ANY BROCHURE, RENDERING, INFORMATION, REPRESENTATION OR PROMISE OF THE OTHER, OR AN AGENT OR BROKER, IF ANY, EXCEPT AS MAY BE EXPRESSLY SET FORTH IN THIS LEASE. | [E]ach of us . . . expressly warrants and represents . . . that no promise or agreement which is not herein expressed has been made to him or her in executing this release, and that none of us is relying upon any statement or representation of any agent of the parties being released hereby. Each of us is relying on his or her own judgment . . . . | [We] expressly warrant[ ] and represent[ ] . . . that no promise or agreement which is not herein expressed has been made to [them] in executing the releases contained in this Agreement, and that none of them is relying upon any statement or representation of any agent of the parties being released hereby. [We are] relying on [our] own judgment . . . . | Tenant acknowledges that neither Landlord nor Landlord's agents, employees or contractors have made any representations or promises . . . except as expressly set forth herein. |

During oral argument, counsel for the tenants/guarantors stated that a plat depicting the inclusion of residential development was attached to a brochure. Yet, the disclaimer language expressly disclaims reliance on any brochure. The language in the Legacy lease is, in fact, even broader than the language in *Schlumberger* and *Forest Oil* because it disclaims reliance not only on statements and representations, but also on brochures, renderings, and other information. Accordingly, we hold that the disclaimer language in the lease is clear and unequivocal. In addition to the clarity of the disclaimer language, the other factors listed in *Forest Oil* also support the enforceability of the disclaimer, including:

(1) The terms of the contract were negotiated. Evidence was introduced to show the negotiations undertaken for each lease. Several of these mark-ups show negotiation occurring with regard to Article XXVI which contained the "Reliance" provision, but no comments were made to the actual provision. Specifically, in the Spa Jane lease, comments were made regarding sections 26.23 and 26.25. In the Papouli's lease, comments were made to section 26.11. In the Dragon Fish lease, comments were made to thirteen sections of Article XXVI. In the Sharkey's lease, comments were made to six sections of Article XXVI. Moreover, since the "lifestyle concept" was discussed during the negotiations, the tenants/guarantors were aware of the representations being made concerning the "lifestyle concept" "yet elected to disclaim reliance on those representations." *McLernon v. Dynegy, Inc.*, 347 S.W.3d 315, 331 (Tex.App.-Houston [14th Dist.] 2011, no pet.); *see also Forest Oil Corp.*, 268 S.W.3d at 58 ("when knowledgeable parties expressly discuss material issues during contract negotiations but nevertheless elect to include waiver-of-reliance . . . provisions, the Court will generally uphold the contract").

(2) The tenants were represented by counsel. Although the tenants cite evidence that the representation by their attorneys was limited in scope, the tenants' decision to limit the scope of the representation does not detract from the evidence that they were represented by counsel. Any limitations they placed on that representation were at their own peril. Moreover, at least two courts have stated that they would uphold a disclaimer provision even if this factor was not met. *See Matlock Place Apts., L.P. v. Druce*, 369 S.W.3d 355, 372 (Tex.

App.-Fort Worth 2012, no pet. h.); *McLernon*, 347 S.W.3d at 333. Finally, the mark-ups show the attorneys were reviewing the lease terms.

(3) The parties dealt with each other at arm's length.

(4) The parties were knowledgeable in business matters and several also had brokers assisting them. Nick Anthony, Papouli's representative, had an MBA, seventeen years of restaurant experience, including two other Papouli's locations, and had a broker involved. LaTanya Facen, All About Shoes' representative, had an MBA and was a Certified Public Accountant who previously worked as a corporate auditor. Lori Massey, Spa Jane's representative, was an attorney and informally consulted with a broker about some of the lease provisions. Steven Lora, Dragon Fish's representative, had an MBA, attended one year of law school, and had a broker involved. Todd Spears, Sharkey's representative, had an MBA, was a professional project manager, and had a broker involved.

(5) The disclaimer language is clear. Not only does the disclaimer state that the tenants are not "relying" on any representation, the provision is entitled "Reliance" and is one of very few provisions in the lease typed in all capital letters.

Although the situation was not a "once and for all" settlement which is an additional factor that can be considered, *see Italian Cowboy Partners, Ltd.*, 341 S.W.3d at 337 n. 8, the trial court properly concluded that the disclaimer language was enforceable.

The tenants/guarantors also make a separate argument that the enforcement of the disclaimer would be against public policy. The Texas Supreme Court, however, has implicitly rejected this argument in upholding the enforceability of disclaimers.

## B. Ambiguity

"Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered." *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex.1996). "A contract is not ambiguous if it can be given a definite or certain meaning as a matter of law. *Id.* "If the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent." *Italian Cowboy Partners, Ltd.*, 341 S.W.3d at 333. "Only where a contract is ambiguous may a court consider the parties' interpretation and admit extraneous evidence to determine the true meaning of the instrument." *Id.* at 333–334. "An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract." *Columbia Gas Transmission Corp.*, 940 S.W.2d at 589. "For an ambiguity to exist, both interpretations must be *reasonable." Id.* (emphasis in original)

The tenants/guarantors contend the inclusion of the term "Legacy Shopping Center" in the lease creates an ambiguity because the term was intended to refer to the "lifestyle center" concept. The tenants/guarantors primarily rely on the definition of the term "Demised Premises" as creating an ambiguity.

"Demised Premises" is defined in the lease as being "outlined on the plan attached hereto as *Exhibit A,* and being a part of Legacy Shopping Center, situated upon the property described in *Exhibit B.*" The term "Shopping Center" is then defined as the property described in Exhibit B. The tenants/guarantors argue that since the term "Legacy Shopping Center" is

used but not defined, the term encompasses the "lifestyle center" concept as represented by Santikos and Hodges. We disagree.

Exhibit A and Exhibit B are both referenced in the term "Demised Premises" because they contain different information. Exhibit A is a diagram or plat showing the particular location in the particular building in which the leased premises would be positioned, while Exhibit B is simply a property description of the land. Moreover, Exhibit A contains an express disclaimer which states, "THIS EXHIBIT IS ATTACHED SOLELY FOR THE PURPOSE OF LOCATING THE SHOPPING CENTER AND THE PREMISES WITHIN THE SHOPPING CENTER AND NO REPRESENTATION, WARRANTY, OR COVENANT IS TO BE IMPLIED BY ANY OTHER INFORMATION SHOWN ON THE EXHIBIT (I.E., ANY INFORMATION AS TO BUILDINGS, TENANTS OR PROSPECTIVE TENANTS, ETC. IS SUBJECT TO CHANGE AT ANY TIME)." Accordingly, the only *reasonable* interpretation of the term "Demised Premises" is that it defined the specific space inside the shopping center to be leased; therefore, the term does not make the lease ambiguous.[2]

### C. Consideration of Negotiations

█ The tenants/guarantors alternatively argue that this court must consider the parties' prior discussions about the "lifestyle center" concept as "surrounding circumstances that inform, rather than vary from or contradict, the contract text." *Houston Exploration Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469 (Tex.2011). The tenants/guarantors argue that the "surrounding circumstances" that this court must consider include "the various representations made by [Santikos and Hodges] through the onsite billboard, online website, the marketing packets provided to prospective tenants and orally in early conversations with the [tenants/guarantors]."

The tenants/guarantors emphasize that the Texas Supreme Court in *Wellington* quoted a sentence from *Tanner Dev. Co. v. Ferguson*, 561 S.W.2d 777, 781 (Tex.1977), stating "[n]egotiations of the parties may have some relevance in ascertaining the dominant purpose and intent of the parties embodied in the contract interpreted as a whole." However, the next sentence in *Tanner Dev. Co.*, not included in the quote, states, "However, once the agreed terms have been reduced to writing in the form of a compulsory contract, the test[ing] of the [contractual language] is not concerned with which party might have originated the alleged [contractual] provision." 561 S.W.2d at 781. In addition, *Wellington* held that the court could consider the "manner" in which the contract was negotiated by striking through sentences on a form contract, not the "content" of the prior negotiation discussions. Moreover, using the parties' discussions about the "lifestyle center" concept to define the term "Legacy Shopping Center" would vary from or contradict: (1) the lease's disclaimer of reliance on any brochure, rendering, information, representation, or promise of the landlord or its agents; and (2) the disclaimer on Exhibit A stating any information as to buildings, tenants, or prospective tenants, etc. is subject to change at any time. Furthermore, although the tenants/guarantors argue the term "Legacy Shopping Center" must equate to the "lifestyle center" concept based on the prior negotiations, the lease does not contain any language that would

---

**2.** Although one lease did not contain the disclaimer on Exhibit A, we conclude the exhibit merely established the location of the leased space within the overall development.

suggest that the term "Legacy Shopping Center" should have any meaning other than the name given to the shopping center. Finally, *Italian Cowboy Partners* suggests that the "surrounding circumstances" to be considered in evaluating whether a disclaimer of reliance provision is binding are the factors set forth in *Forest Oil* which we previously discussed, not prior negotiation discussions. *Italian Cowboy Partners, Ltd.*, 341 S.W.3d at 337 n. 8. Accordingly, we reject the tenants/guarantors' argument that this court should consider the representations about the "lifestyle center" concept as surrounding circumstances in interpreting the term "Legacy Shopping Center."

### D. Non–Parties to Lease

■ The tenants/guarantors next argue that the disclaimer language was applicable only to the landlord, Santikos Legacy, Ltd., and did not extend to the other developers or Hodges who were not parties to the lease. The summary judgment evidence established, however, that Hodges and the other Santikos parties were agents of Santikos Legacy, Ltd. in relation to the shopping center, and the disclaimer extended to "any brochure, rendering, information, representation or promise" of the landlord "or any agent or broker." Accordingly, as agents, any representations by Hodges and the other Santikos parties were expressly included in the terms of the disclaimer. *See Schomburg v. TRW Vehicle Safety Systems, Inc.*, 242 S.W.3d 911, 914–15 (Tex.App.-Dallas 2008, pet. denied) (holding company that supplied seat belt system was included in release of GM and its component suppliers because the company was readily identifiable from the description of the released parties); *Atlantic Lloyds Ins. Co. v. Butler*, 137 S.W.3d 199, 219 (Tex.App.-Houston [1st Dist.] 2004, pet. denied) (extending release to various parties who had authori-

ty to act on behalf of party expressly named in the release).

### E. Guarantors

■ The tenants/guarantors also assert that the disclaimer expressly applied only to the tenants and, therefore, did not apply to the guarantors. The Guaranty, however, states that the guarantor guarantees the "payment and performance of all liabilities, obligations and duties" "imposed upon Tenant under the terms of the Lease, as if Guarantor had executed the Lease as Tenant thereunder." This language effectively incorporates the terms of the lease into the guaranty and binds the Guarantor to the same terms as the Tenant, including the disclaimer provision. *See In re Prudential Ins. Co. of America*, 148 S.W.3d 124, 135 (Tex.2004) (guarantor bound by provisions in lease where lease terms are incorporated into guaranty, and agreements executed at same time, with same purpose, as part of same transaction are construed together).

### F. Failure to Disclose New Information after Lease

■ The tenants/guarantors next argue that the disclaimer did not preclude their claims relating to Santikos and Hodges' failure to disclose new information after the lease was signed that made prior representations false. Specifically, the tenants/guarantors rely on cases holding that "when one makes a representation, he has a duty to disclose new information when he is aware the new information makes the earlier representation misleading or untrue." *Anderson, Greenwood & Co. v. Martin*, 44 S.W.3d 200, 212 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). The flaw in this argument, however, is that the tenants/guarantors had disclaimed reliance on the earlier representation; therefore, even if new information made the representation

false, the tenants/guarantors were not relying on the representation whether true or false. *See Susanoil, Inc. v. Continental Oil Co.*, 519 S.W.2d 230, 236 n. 6 (Tex.Civ.App.-San Antonio 1975, writ ref'd n.r.e.) (new information must be disclosed where party knows the other party is relying on the prior representation). Accordingly, the reliance element for the failure to disclose the new information also fails.

### G.  DTPA Claims Not Requiring Reliance

■■■■  The tenants/guarantors contend that the disclaimer does not preclude their DTPA claims that do not include reliance as an element of the claim. Specifically, the tenants/guarantors contend neither their breach of warranty claim nor their unconscionability claim include reliance as an element of the claim. First, although reliance is not an element of an unconscionability claim, certain breach of warranty claims do require proof of some form of reliance. *Compare Mays v. Pierce*, 203 S.W.3d 564, 572 (Tex.App.-Houston [14th Dist.] 2006, pet. denied) (proof of reliance not required to establish unconscionability claim) *with Southwestern Bell Telephone Co. v. Marketing on Hold, Inc.*, 308 S.W.3d 909, 921 (Tex.2010) (breach of express warranty requires proof of reliance). Moreover, DTPA claims that do not require reliance still require proof that a misrepresentation was a producing cause of damages. *James V. Mazuca & Assocs. v. Schumann*, 82 S.W.3d 90, 95 (Tex.App.-San Antonio 2002, pet. denied). "There must be an 'unbroken causal connection' between the actionable misrepresentation and the injury." *Id.* Where proof of reliance is not an element of recovery, reliance still may be a factor in determining whether a misrepresentation was a producing cause of damage. *Id.*

In this case, the tenants/guarantors disclaimed any reliance on any representations. Because they did not rely on any representations, those representations could not be the producing cause of any damages. *See Prudential Ins. Co. of America v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161 (Tex.1995) (noting "as is" clause negated causation essential to recover on DTPA theories).

### H.  Lack of Disclaimer Provision's Compliance with DTPA Waiver Provision

■■■■  The tenants/guarantors contend the disclaimer provision does not meet the requirements necessary to waive the DTPA. This argument was addressed by the Texas Supreme Court in *Prudential Ins. Co.*, 896 S.W.2d at 163–64. Although the court was considering the argument in connection with an "as is" clause as opposed to a disclaimer of reliance clause, the clauses have the same effect in negating causation. The court noted, "Goldman's 'as is' agreement is not a waiver of DTPA rights; it is a statement that no basis exists for the assertion of such rights." *Id.* Just as the "as is" clause in *Prudential Ins. Co.* was not required to comply with the DTPA's waiver provision, the disclaimer of reliance provision in the instant case also was not required to comply.

### I.  Exclusion of Summary Judgment Evidence

■■■■  The tenants/guarantors next contend the trial court erred in striking portions of the affidavits submitted by the attorneys for the tenants/guarantors which contradicted the tenants/guarantors' prior testimony regarding the attorneys' representation of them.

We review rulings concerning the exclusion of summary judgment evidence under an abuse of discretion standard. *Polansky*

*v. Southwest Airlines Co.,* 75 S.W.3d 99, 102 (Tex.App.-San Antonio 2002, no pet.). "The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action." *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241 (Tex.1985). "Rather, it is a question of whether the court acted without reference to any guiding rules and principles." *Id.* at 241–42. "Another way of stating the test is whether the act was arbitrary or unreasonable." *Id.* at 242. "The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Id.*

The trial court struck portions of the affidavits of the attorneys representing Papouli's, All About Shoes, and Lynda Fisher's Hair Studio. Since Lynda Fisher's Hair Studio is not a party to the appeal, we do not address her attorney's affidavit.

The portions of the affidavits of Papouli's attorney that were stricken stated:

> My role was strictly limited to reviewing the lease to confirm that the business terms negotiated by my client and the landlord were correct, and to make suggested revisions to the lease following the review of the lease with my client and taking my client's comments into consideration.
>
> Prior to my involvement, I understood that my client had already negotiated the terms of the lease.
>
> My role was to review the lease to ensure that the lease reflected the agreement already negotiated between my client and Santikos Legacy, Ltd.

The portions of the affidavits of All About Shoes' attorney that were stricken stated:

> My role was strictly limited to reviewing the legal provisions in the lease and recommending changes to the lease.
>
> My role was to review the lease to ensure that the lease reflected the business terms already negotiated between my client and Santikos Legacy, Ltd.

We agree with the tenants/guarantors that the legal basis for the trial court's striking of these portions of the affidavits was erroneous. In striking the paragraphs from the affidavits, the trial court relied on law regarding the legal effect of variations between the deposition testimony and affidavit testimony *of the same witness.* See *Farroux v. Denny's Restaurants, Inc.,* 962 S.W.2d 108, 111 (Tex.App.-Houston [1st Dist.] 1997, no pet.); *see also Cantu v. Peacher,* 53 S.W.3d 5, 10–11 (Tex.App.-San Antonio 2001, pet. denied) (containing this court's analysis of the law where the same witness's deposition and affidavit testimony conflict). This law, however, is not applicable to variations between the deposition testimony and affidavit testimony of two different witnesses, in this case the tenant and the attorney.

■ Assuming that the trial court erred in striking the portions of the depositions, such error would not require reversal unless the error probably caused the rendition of an improper judgment. *See* TEX.R.APP. P. 44.1(a). Although the tenants/guarantors do not discuss how the error resulted in harm, we have reviewed the stricken portions of the affidavits, and we conclude the provisions that were stricken would have further harmed the tenants/guarantors' position and further supported the summary judgment because they show that the tenants were represented by legal counsel in regard to the lease.

Although the stricken portions of both affidavits stated that the business terms of the lease had already been negotiated be-

fore the attorneys were retained, the disclaimer of reliance provision is not a business term, but a legal provision. In the stricken portion of the affidavit of Papouli's attorney, he stated that his role included making suggested revisions to the lease. This would further bolster the summary judgment since it shows that the attorney's role included making suggested revisions to the legal terms of the lease. In the portions of the affidavit that were not stricken, Papouli's attorney stated that he was retained to provide legal advice and that he was provided with an electronic version of the lease and allowed to make edits. Although the attorney explains the reason he did not attempt to address the disclaimer of reliance provision, nothing prevented him from doing so or from explaining the legal effect of the disclaimer provision to his client.

Similarly, the stricken portion of the affidavit of All About Shoes' attorney stated his role was limited to reviewing the legal provisions in the lease and recommending changes to the lease. This would support the summary judgment because it demonstrates that the tenant was represented by legal counsel in reviewing the disclaimer of reliance provision. In the portion not stricken, the attorney confirms that he was retained to provide legal advice. Accordingly, explaining the legal effect of the disclaimer provision to his client was within the scope of his representation.

Although the trial court may have erred in striking portions of the affidavits, the error did cause the rendition of an improper judgment and, therefore, is not reversible error. *See id.*

### CONCLUSION

The disclaimer of reliance provision is enforceable against the tenants and guarantors and extends to any representations made by Santikos and Hodges. The disclaimer provision defeats all of the claims of the tenants and guarantors involving representations and promises other than those expressly set forth in the lease. The trial court's order striking portions of the summary judgment evidence did not result in reversible error. Accordingly, the trial court's order granting summary judgment is affirmed.